### GREENBRIER DISTILLERY CO. v. UNITED STATES et al.

(District Court, W. D. Kentucky. April 11, 1923.)

No. 709.

1. **Time** ⊂⊃11—**Revenue Act 1918, § 604, took effect 12 o'clock midnight February 24, 1919.**

Under Revenue Act 1918, § 1409 (Comp. St. Ann. Supp. 1919. § 6371¾d), providing that, unless otherwise specially provided, the act should take effect on the day following its passage, which act was approved February 24. 1919. section 604 (section 5986j). imposing a floor tax on distilled spirits, took effect and became in force from and after 12 o'clock midnight of February 24, 1919.

2. **Internal revenue** ⊂⊃27(2)—**Distilling company held liable, under Revenue Act 1918, § 604, for floor tax on spirits then in its warehouse, though previously sold.**

Under Revenue Act 1918, § 604 (Comp. St. Ann. Supp. 1919, § 5986j), imposing an additional floor tax on all distilled spirits held on the day after its passage, and intended for sale, a distilling company *held* liable for the tax on spirits in its bonded warehouse on that day, though they had previously been sold to outside purchasers, who had paid all prior taxes and had ordered them shipped, and though they were so shipped before the tax was demanded; the remedy of the company being against the purchasers for reimbursement.

---

At Law. Action by the Greenbrier Distillery Company against the United States and Robert H. Lucas, Collector of Internal Revenue. On demurrers to petition. Demurrers sustained.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., for plaintiff.
W. S. Ball, U. S. Atty., of Louisville, Ky., for the United States.

WALTER EVANS, District Judge. The plaintiff brought this action at law against the United States and Robert H. Lucas, collector of internal revenue, to recover $3,333.26, with interest thereon, that being the amount of a certain newly imposed tax of $3.20 per gallon on distilled spirits paid by plaintiff as stated in its petition. It is shown also by an amended petition filed by the plaintiff that all of the said spirits on which said tax of $3.20 per gallon was imposed had remained in plaintiff's bonded warehouse up to 2 o'clock in the afternoon of February 25, 1919. This tax of $3.20 per gallon was assessed against the plaintiff at a later date and was paid by it to the defendant Lucas, collector of internal revenue, under protest. Plaintiff's application for the refunding of the taxes so paid was denied by the United States.

Each of the defendants has filed a demurrer to plaintiff's petition. A suit cannot be brought against the United States without its express consent. No allegation of such consent is made in plaintiff's petition, and could not with accuracy have been made. The demurrer of the United States will be sustained as of course for the reason suggested.

But bringing an action against an officer of the United States who has collected taxes from a citizen under certain circumstances for the recovery of taxes which had been paid under protest is a judicially established right of a taxpayer to whom the refunding of the amount so paid has been denied. This is an action of that character, and the demurrer of the defendant Lucas to plaintiff's petition raises the one question of whether, if the averments of the petition are true, a right to the recovery sought is shown by the plaintiff.

The distilled spirits, the payment of taxes on which has furnished the basis of plaintiff's claim for the relief now sought, were, after their manufacture in the ordinary way, deposited by plaintiff in its bonded warehouse under the provisions of the then existing laws, and especially section 48, Act of August 27, 1894, c. 349, 28 Stat. 563 (6 Comp. Stat. 1916, § 5986, p. 7048), and were, as we have seen, in plaintiff's warehouse before and also on February 25, 1919. It seems, however, from the averments of plaintiff's petition, that all federal taxation thereon imposed by laws in force on February 24, 1919, had been fully paid before midnight of that day, though in fact none of the spirits had been removed from the warehouse at that time.

[1] An act to provide revenue and for other purposes was passed by Congress on February 24, 1919. At its foot is this statement: "Approved 6:55 p. m. February 24, 1919." 40 Stat. 1152. Immediately preceding that note of the approval of the act is section 1409 thereof (Comp. St. Ann. Supp. 1919, § 6371¾d) in this language: "That unless otherwise herein specially provided, this act shall take effect on the day following its passage." Inasmuch as fractions of days are

not, and, indeed, cannot ordinarily be, considered in construing stat-
utes, the provision last quoted must be construed to mean that the act
should take effect on February 25, 1919, and unquestionably meant
that the whole of that day should be included. This being true, the
act thus approved became the law of the United States and went into
effect immediately after the close of February 24, 1919, and was in
full force during all of the 25th day of that month.

Section 604 of the act (40 Stat. 1107 [Comp. St. Ann. Supp. 1919,
§ 5986j]) is as follows:

"That upon all distilled spirits produced in or imported into the United
States, upon which the internal revenue tax now imposed by law has been
paid, and which, on the day after the passage of this act, are held by any
person intended for sale or for use in the manufacture or production of
any article intended for sale, there shall be levied, assessed, collected, and
paid a floor tax of $3.20 (if intended for sale for beverage purposes or
for use in the manufacture or production of any article used or intended
for use as a beverage) on each proof gallon, and a proportionate tax at
a like rate on all fractional parts of such proof gallon."

It will be noted that the $3.20 per gallon tax imposed by this section
is denominated a "floor tax"—probably a somewhat unusual term in the
previous legislation of Congress in reference to distilled spirits. While
section 1 of the act (40 Stat. 1057, 1058 [Comp. St. Ann. Supp. 1919,
§ 6371¼a]) gives definitions of quite a number of words used therein,
the phrase "floor tax" is not one of them. Counsel have not referred
us to any judicial definition, nor have we found any; but it would
seem clear enough that Congress meant to impose the tax of $3.20 per
gallon upon any and all spirits then on the floor of the warehouse which
may fairly be regarded as equivalent to the words "in the warehouse."

As the spirits here involved were in the plaintiff's warehouse at
the time this "floor tax" was imposed, they became subject to that
tax, and nothing could relieve that situation except payment of the
tax. Before such payment, however, namely, about 2 o'clock p. m. on
February 25th, those spirits, as we have seen, were removed by the
plaintiff, or were permitted to be removed by certain purchasers there-
of, who, before the approval of the Act of February 24, 1919, had
paid all taxes due the United States up to and including that date,
and the spirits had been gotten ready to be removed on the following
day. Before that removal was accomplished, however, the new "floor
tax" had been imposed by law, and that burden rested upon said spirits
then in plaintiff's warehouse.

[2] We shall not undertake to give them in detail, but somewhat
elaborate statements are made in plaintiff's petition as amended as a
basis for its claim that inasmuch as the spirits had all been sold to
outside purchasers previously to February 24, 1919, and that they,
on or before that date, had paid all taxes theretofore imposed on said
spirits by law, and had ordered them shipped to themselves separately,
and had made arrangements for such shipments, therefore those pur-
chasers, and not the plaintiff should have been required to pay the
$3.20 "floor tax" imposed by the Act of February 24, 1919. But that
does not seem to have been the intention of Congress, as there is no
provision to that effect in the act. In this situation, under the law
the government had the right to look to the owner and operator of the

bonded warehouse for its taxes, without regard to the rights or equities of other persons—those rights and those equities between the plaintiff and other persons being adjustable by themselves.

Plaintiff also states in its petition that it had stored distilled spirits in its warehouse, issued negotiable warehouse receipts therefor, and complied with the laws of the United States and those of the state of Kentucky in respect thereto, and that all taxes due thereon, so far as they were going to the United States, had been collected by Robert H. Lucas, collector of internal revenue for the Fifth district of Kentucky, previous to the beginning of the 25th of February, 1919.

It is further averred by the plaintiff that the predecessor of the defendant Lucas, as collector of internal revenue, namely, J. Rogers Gore, under date of March 20, 1919, sent out a circular, the terms of which are set forth in full in the petition, and which circular notified persons interested in the claims made by the United States for "floor taxes" under the Act of February 24, 1919, of the purposes of the government to collect that tax. Among other things this circular contained clauses as follows:

"*Parties Liable to Tax on Goods in Transit.* Articles subject to additional tax sold and consigned direct to the purchaser and in transit on the date the act took effect will be included in the puchaser's inventory. Where such distilled spirits are consigned by the shipper to his own order with instructions on the shipping tag to notify the persons named thereon, who is a bona fide purchaser, and bill of lading is inclosed in good faith to the person named on the shipping tag and a draft attached for the sum due and bill of lading draft is attached is sent to a bank or other collecting agency for collection, the purchaser only is liable for additional tax and should inventory and return said spirits. If shipped under bills of lading in which the shipper is named as consignee, not indorsed or indorsed in blank, the goods will be deemed the property of the shipper held for sale and the shipper should inventory and return said spirits.

"In doubtful cases collectors will be guided in determining whether the consignor or consignee is liable for the floor taxes on goods in transit by the various Treasury Decisions relative to 'shipment with bill of lading and drafts' heretofore published by this office as referred to in the Regulation No. 1, revised November 1, 1917, page 72."

The petition further states that at various times prior to February 24, 1919, the owners of all the spirits involved in this action had requested plaintiff to make shipment thereof, and that such spirits were thereupon gauged by the proper officers of the United States, and that all the taxes then appearing to be due thereon to the United States were paid in full, though it is not claimed that anything on account of the $3.20 per gallon "floor tax" had been ascertained or paid on or prior to that date, or at all until the assessment complained of in this action had been made and enforced.

It is claimed by the plaintiff, however, upon all the facts it states in its petition as amended, that payment of the taxes on said spirits ought to have been exacted from the several purchasers thereof, and not from the plaintiff to any extent. Upon careful consideration, however, we have concluded that the United States had the right under the law to collect all of the taxes involved in this litigation from the plaintiff, in whose warehouse they were at the time those taxes were imposed by law which became effective early on February 25, 1919,

and which thus brought within its provisions all distilled spirits then in bonded warehouses. This being so, we cannot doubt that the plaintiff's petition does not state a cause of action against the defendant collector of internal revenue.

The government of the United States possibly, if it had been applied to, might have facilitated or endeavored to facilitate the collection of this additional taxation from the purchasers of those spirits, as seemed to have been done in respect to several other quantities thereof in the same situation, and which other spirits were also taken from plaintiff's warehouse under circumstances otherwise entirely similar to those existing here. But the effect of a failure to act in that way should not now be passed upon by this court, although the plaintiff had possibly been compelled to advance the taxes for the respective purchasers before the spirits could be delivered to them.

The petition also very adequately shows all the essential facts pertaining to the assessment of the taxes on said spirits against the plaintiff, its resistance thereto, the compulsory payment thereof to the defendant Lucas as collector under protest, and its application to the proper department for a refunding of the amount so collected by the United States. Upon the entire situation as thus presented, we have concluded that there is no alternative, except to hold that the plaintiff has not stated in its petition as amended a cause of action against the defendant collector, and that his demurrer to the petition as amended should be and it is now sustained.

An order accordingly will be entered, and the plaintiff is given 60 days within which to amend its petition.